# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| AYDIN AGHDASHLOO, an individual, | |
| Plaintiff, | COMPLAINT |
| v. | No. 2:22-cv-04425 |
| MOHSEN PARVARESH MOHSENI *aka* AFSHIN PARVARESH, an individual, | (Jury Trial Demanded) |
| Defendant. | |

## INTRODUCTION

1. Plaintiff Aydin Aghdashloo is one of the most prominent artists of modern and contemporary Iranian art.

2. For over fifty years, Aghdashloo has contributed to and advanced the Iranian and international art movements, including by helping launch multiple museums in Iran, sending Iranian artworks to museums throughout the world, and introducing his own groundbreaking artistic styles to a worldwide audience, including his acclaimed Memories of Destruction series. Aghdashloo's work has gained recognition, in part, for tackling the abuses, suppression, and annihilation of individual rights and of women in Iranian society. Aghdashloo's art seeks to uplift and shine light on the experiences and restrictions placed on those in Iran's immensely conservative society.

3. Aghdashloo's international profile, independent political views, and work in the pre-Islamic Revolution Pahlavi era has made him a target of hardline factions within the Iranian government. These factions often engage proxies to wage character assassination campaigns against those they deem antagonistic to the regime and its policies.

1

4. Iranian artists and galleries are one of the few private sectors operating in Iran, constantly striving to remain free from political interference and offering an alternative to the government's cultural propaganda. Artists like Aydin Aghdashloo are among a group of cultural leaders who have provided alternative ideologies through their scholarly work, research, and teaching. As a result, Aghdashloo has been repeatedly attacked by Iran's hardline governmental factions since the Islamic Revolution.

5. Within this political-cultural context, Defendant Afshin Parvaresh has engaged in a calculated effort to destroy Aghdashloo's reputation through the repeated publication of heinous lies about Aghdashloo. Parvaresh's misconduct is simultaneously furthered by Parvaresh's extortionate and political agendas, which have become inextricably intertwined.

6. Parvaresh has published these lies as part of his extortionate industry whereby Parvaresh demands money from artists and galleries. If the artist or gallery pays Parvaresh, he publishes positive content about the artist or gallery to influence consumers and increase sales. By contrast, if the artist or gallery refuses to pay Parvaresh, Parvaresh publishes false, negative content about the artist or gallery to discourage consumers and hurt sales.

7. As part of his extortionate scheme, Parvaresh has gone so far as to function as an art broker in the U.S. on behalf of Iranian artists and galleries.

8. Regarding Aghdashloo, Parvaresh has admitted, in leaked audio records, his intent to "destroy" Aghdashloo and his family and for him to be "wiped from history," and to that end, Parvaresh has fabricated, out of whole cloth, a shocking series of absolutely false and defamatory statements about Aghdashloo. At the time the audio files were recorded, Parvaresh had been providing these fabrications to several news outlets, including the New York Times, with the intent to spread the defamatory statements. Parvaresh's false and defamatory statements have included:

2

- That Aghdashloo assaulted and raped numerous women, and then threatened them to force them to remain silent;
- That Aghdashloo is a pedophile, who has had sexual relations with and raped underage students, and then threatened them to force them to remain silent;
- That Aghdashloo raped his own daughter;
- That Aghdashloo forged artwork by other artists;
- That Aghdashloo lied about his familial heritage and is actually a bastard;
- That Aghdashloo has stolen artwork from museums that Aghdashloo has operated;
- That Aghdashloo has smuggled Iranian ancient artifacts out of Iran;
- That Aghdashloo runs a sex trafficking operation with prominent Tehran art galleries;
- That Aghdashloo orchestrated sham auction sales for his artwork to increase its value;
- That Aghdashloo engaged in corruption and other criminal conduct; and
- That Aghdashloo collaborated with Iranian Intelligence Services to facilitate his return to Iran after the Islamic Revolution.

9. In furtherance of his character assassination campaign, Parvaresh has offered to provide fake medical records and compensation to women and has encouraged these women to fabricate stores about Aghdashloo. Parvaresh has engaged in this misconduct before introducing the women to reporters, including a reporter at the New York Times, with the intent to spread false and defamatory statements about Aghdashloo.

10. As a result of Parvaresh's false and defamatory statements, Aghdashloo's impeccable reputation in the arts community has been substantially harmed. He has been excluded from festivals and exhibitions and generally experienced a negative effect on his professional and personal life.

11. As a further result of Parvaresh's false and defamatory statements, Aghdashloo has lost sales of his artwork and the amounts that Aghdashloo has been able to realize for sales of his artwork have decreased.

12. As a further result of Parvaresh's conduct, Aghdashloo and his family members have received repeated death threats and have feared for their safety. Exacerbating matters, Parvaresh has published home addresses, personal information, and photos of Aghdashloo's family members.

## JURISDICTION & VENUE

13. This Court has subject matter jurisdiction over Aghdashloo's Lanham Act claim, brought under 15 U.S.C. §1125(a), pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Aghdashloo's state law claim pursuant to 28 U.S.C. §1367 because the state law claim is so related to the federal claim such that they form part of the same case and controversy under Article III of the United States Constitution.

14. This Court has personal jurisdiction over Parvaresh consistent with Due Process and pursuant to Ohio Rev. Code Ann. §2307.382 because Aghdashloo's causes of action arise, at least in part, out of Parvaresh's use of property in Ohio, and because Parvaresh engaged in tortious acts in Ohio.

15. This Court is a proper venue pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred within this district and all defendants are subject to personal jurisdiction in this district.

## PARTIES

16. Aydin Aghdashloo is an individual, who is a citizen of Canada and a resident of Toronto.

17. Afshin Parvaresh is an individual, who, on information and belief, is a resident of Pennsylvania.

**STATEMENT OF FACTS**

A. **Plaintiff Aydin Aghdashloo's Contributions to Iranian Art**

18. Aydin Aghdashloo is an Iranian-Canadian painter, author, scholar, and one of the most prominent artists of Iranian modern and contemporary art.

19. Aghdashloo's artworks have been commended for reflecting the concept of gradual loss and destruction of beauty and enlightenment, and also for recreating major classical works of art in a modern and surreal context.

20. Aghdashloo is also an expert on ancient Iranian and Islamic Art, including Persian miniatures and calligraphy.

21. Aghdashloo held his first individual exhibition at the Iran-America Society in Tehran in 1975.

22. Aghdashloo then went on to assist in the opening of three museums in Iran before the 1979 revolution: the Reza Abbasi Museum, the Archaeology Museum of Khorramabad, and the Kerman San'ati Museum of Contemporary Art.

23. Prior to the Iranian Revolution in 1979, Aghdashloo served as the Cultural Advisor to the Empress Farah Pahlavi of Iran.

24. During that time, Aghdashloo also produced and presented a popular TV documentary series concerning arts and architecture.

25. In 1981, after the Iranian Revolution which resulted in the loss of all of his official positions due to his political views, Aghdashloo established a private art academy where he has taught painting and art history to thousands of students over almost four decades. Notably, this art

academy was the only place in Iran to learn about modern and contemporary arts and culture after the Cultural Revolution "Islamicized" the Iranian Universities, removing non-Islamic content from curricula.

26. Following the Iranian Revolution, Aghdashloo continued to develop his unique art style and continued to expose the world to his art and aesthetic and to Iranian art, generally. However, the official Iranian media, including the infamous Kayhan Newspaper and Basij Organization, continuously attacked Aghdashloo for his liberal views and work with the Pahlavi Dynasty. Furthermore, due to his political views and association with the Pahlavi Dynasty, Aghdashloo was banned from leaving Iran for years in the aftermath of the revolution, and his continued commitment to training future generations of artists was one of the reasons he became so widely recognized.

27. During his career, Aghdashloo also helped coordinate the exhibition of Iranian art in several countries, including China, Japan, and Italy.

28. Aghdashloo has published more than a dozen books, including eight collections of articles, three collections of paintings, and two research collations about Iranian art history.

29. Aghdashloo's credentials include teaching positions at various universities, including Tehran Alzahra University.

30. Aghdashloo has given lectures around the world at prestigious institutions such as Oxford University, the University of Toronto, and the University of California-Irvine.

31. Aghdashloo's diverse accomplishments are widely praised. Among other commentators, author Edward Lucie-Smith lauded Aghdashloo's "ironic subversion of a revered western original."

32. Film director Abbas Kiarostami declared Aghdashloo "not just a great painter," but

a "cultural heritage himself."

33. Iranian philosopher Dariush Shayegan writes: "Aghdashloo is an exceptional figure: an adept painter with multiple talents to boot."

34. In 2016, Aghdashloo was awarded the prestigious Chevalier des Arts et des Lettres by the French government in a ceremony in Tehran.

**B.  Defendant Afshin Parvaresh's Predatory Conduct**

35. Afshin Parvaresh is a blogger and self-proclaimed investigative journalist, purportedly focusing on Iranian arts.

36. Parvaresh began his purported journalistic career in mid-2013, when he started posting on fringe Persian-language websites, where he accused multiple people (primarily artists) of unethical and criminal conduct.

37. Since mid-2013, Parvaresh's writing has appeared in several official Iranian government-owned media outlets, including the Islamic Republic News Agency ("IRNA"), the Islamic Republic of Iran's official news agency. Parvaresh's writings have almost always been critical of independent artists and reformist individuals, aligning Parvaresh's positions with hardline factions within the Iranian regime.

38. Over the last decade, Parvaresh has used his affiliation with the Iranian Regime to engage in an extortionate scheme. Specifically, Parvaresh has threatened to publish disparaging content about artists and galleries under the guise of news reports unless the artist or gallery pays him.

39. When an artist or gallery has chosen to pay Parvaresh, Parvaresh has published promotional content about the artist or gallery disguised as a news report—i.e., an advertorial—to encourage consumers to purchase from the artist or gallery.

7

40. When an artist or gallery has refused to pay Parvaresh, Parvaresh has published negative material about the artist or gallery, also disguised as a news report, to discourage consumers from purchasing from the artist or gallery.

41. As part of his extortion, Parvaresh has used proxies to communicate his demands to artists and galleries, though at times, Parvaresh himself has communicated his extortionate demands directly.

42. As an example, in July 2017, Parvaresh criticized the Tehran Auction for selling a counterfeit painting, which had been purportedly painted by a famous deceased Iranian poet and painter. Parvaresh claimed that the auction demonstrated the corruption in Iran's art world. A day after Parvaresh made his allegation, Mehr News Agency, which is admittedly owned by the Islamic Ideology Dissemination Organization, published an article apparently amplifying Parvaresh's claim, under the title "Auction or Money Laundering?" This sequence of events follows a pattern of how Parvaresh's extortion results in attacks on Iranian independent artists and arts professionals that are consistently echoed by ultra-conservative and Islamist elements inside the Iranian regime, such as the Kahyan Newspaper.

43. In addition to multiple other adverse Iranian court rulings against Parvaresh, in April 2019, the Tehran Public Court issued a bench warrant for Parvaresh following his unsubstantiated claims of plagiarism against an artist.

44. Over the last year, Parvaresh has sought to destroy Aghdashloo's reputation and livelihood by publishing numerous false and disparaging statements about Aghdashloo on multiple social media accounts, including on Parvaresh's Twitter, Telegram, and Instagram accounts, the latter of which is located at:

- https://www.instagram.com/afshin_parvaresh/?hl=en.

8

45. In particular, since September 5, 2020, Parvaresh has published the following false and defamatory statements about Aghdashloo in Persian:

- That Aghdashloo assaulted and raped numerous women, and then threatened them to force them to remain silent;

- That Aghdashloo is a pedophile, who has had sexual relations with and raped underage students, and then threatened them to force them to remain silent;

- That Aghdashloo raped his own daughter;

- That Aghdashloo forged artwork by other artists;

- That Aghdashloo lied about his familial heritage and is actually a bastard;

- That Aghdashloo has stolen artwork from museums that Aghdashloo has operated;

- That Aghdashloo has smuggled Iranian ancient artifacts out of Iran;

- That Aghdashloo runs a sex trafficking operation with prominent Tehran art galleries;

- That Aghdashloo orchestrated sham auction sales for his artwork to increase their value;

- That Aghdashloo engaged in corruption and other criminal conduct; and

- That Aghdashloo has collaborated with Iranian Intelligence Services to facilitate his return to Iran after the revolution.

(collectively, the "Statement(s)").

46. The Statements contain false and disparaging assertions of fact about Aghdashloo.

47. Contrary to the Statements, Aghdashloo is not a pedophile.

48. Contrary to the Statements, Aghdashloo has not had sexual relations with underage students.

49. Contrary to the Statements, Aghdashloo has not raped anyone.

9

50. Contrary to the Statements, Aghdashloo has not sexually assaulted nor sexually exploited anyone.

51. Contrary to the Statements, Aghdashloo has not abused anyone.

52. Contrary to the Statements, Aghdashloo has not engaged in any sexual crimes.

53. Contrary to the Statements Aghdashloo has not threatened women nor teenage girls.

54. Contrary to the Statements, Aghdashloo has not forged nor counterfeited artwork or otherwise participated in the forgery or counterfeiting of artwork.

55. Contrary to the Statements, Aghdashloo has not engaged in corruption or other criminal conduct.

56. Contrary to the Statements, Aghdashloo has not orchestrated sham auction sales of his artwork.

57. Contrary to the Statements, Aghdashloo has not ever collaborated with Iranian Intelligence Services.

58. Parvaresh knew that his Statements were false when he published them because he had no documents or credible information supporting the Statements and because he was motivated by his personal agenda in publishing scandalous statements.

59. While Parvaresh's Statements were disguised as news reports, Parvaresh's goal in publishing the Statements was primarily to influence actual and potential consumers of Aghdashloo's art by stigmatizing both Aghdashloo's art and Aghdashloo personally.

60. In fact, Parvaresh's Statements reflect an organized campaign by Parvaresh to penetrate the Iranian art market and to reach consumers within this market.

61. Parvaresh succeeded in his goal. Parvaresh's false Statements deceived consumers of Iranian art and actual and potential purchasers of Aghdashloo's art. Parvaresh's deceptions

included, but were not limited to, deceiving consumers into believing that Aghdashloo's artworks were forgeries, that the prices of Aghdashloo's artwork were artificially inflated based on fixed auctions, and that Aghdashloo's artworks were created by a perpetrator of heinous sexual crimes.

62. As a direct and proximate result of Parvaresh's publication of the Statements, Aghdashloo has suffered and will continue to suffer actual harm consisting of significant pecuniary harm (including lost and diminished-value art sales), significant harm to his reputation and standing in the community, personal humiliation, mental and emotional anguish, and suffering.

## CLAIMS FOR RELIEF

### Count I: False Advertising Under the Lanham Act

63. Aghdashloo repeats and incorporates by reference herein each of the preceding paragraphs.

64. Parvaresh's Statements contain false statements of fact concerning Aghdashloo and Aghdashloo's art.

65. Parvaresh has engaged in an extortionate scheme with the Iranian artwork market. Specifically, Parvaresh has demanded money from artists and galleries. If the artist or gallery pays Parvaresh, he publishes positive content about the artist or gallery to influence consumers and increase sales. By contrast, if the artist or gallery refuses to pay Parvaresh, Parvaresh publishes false, negative content about the artist or gallery to discourage consumers and hurt sales. As part of his extortionate scheme, Parvaresh has gone so far as to function as an art broker in the U.S. on behalf of Iranian artists and galleries.

66. Parvaresh's Statements constitute advertisements that were introduced into interstate commerce through publication on internet websites viewed throughout the U.S. and the world by actual and potential consumers of Aghdashloo's art. The Statements are advertisements

because they were made for the purpose of influencing the purchasing decisions of the consuming public. Specifically, the Statements were part of an organized attempt by Parvaresh to penetrate the relevant market for Iranian art and to deceive actual and potential consumers of Aghdashloo's art. While the Statements were disguised as news reports, they were in fact advertisements—or advertorials—the primary goal of which was to influence consumers.

67. Parvaresh's Statements deceived relevant consumers into believing that Aghdashloo's art comprised forgeries, that the prices of Aghdashloo's art were artificially inflated based on rigged auctions, and that Aghdashloo's artwork was created by a perpetrator of heinous sexual crimes.

68. Parvaresh's Statements were material in that they were likely to influence the purchasing decisions of a substantial portion of the intended audience—i.e., consumers of Iranian art—and in fact did influence consumers' purchasing decisions regarding Aghdashloo's art.

69. As a direct and proximate result of Parvaresh's false statements, Aghdashloo has been harmed, including, but not limited to, as a result of lost sales and diminished-value sales of his art.

### Count II: Defamation

70. Aghdashloo repeats and incorporates by reference herein each of the preceding paragraphs.

71. Parvaresh's Statements are defamatory per se because, on their face and without resorting to any extrinsic facts, they tend to, and in fact do: a) charge Aghdashloo with an indictable offense involving moral turpitude or infamous punishment; b) degrade and disgrace Aghdashloo; c) hold Aghdashloo up to public hatred, contempt, and scorn; and d) injure Aghdashloo in his trade, profession, and occupation.

72. Parvaresh knew of and intended that reasonable readers would understand the Statements to convey the following defamatory meanings:

- That Aghdashloo is a pedophile, that has had sexual relations with and raped underage students, and then threatened them to force them to remain silent.
- That Aghdashloo raped, sexually assaulted, sexually exploited, and abused students.
- That Aghdashloo forged and counterfeited artwork.
- That Aghdashloo orchestrated sham auction sales for his artwork.
- That Aghdashloo engaged in corruption, theft, and other criminal conduct.
- That Aghdashloo collaborated with Iranian Intelligence Services.

73. Parvaresh's Statements are false. Contrary to the Statements, Aghdashloo is not a pedophile; Aghdashloo has not had sexual relations with underage students; Aghdashloo has not raped, sexually assaulted, sexually exploited, or abused anyone; Aghdashloo has not threatened anyone; Aghdashloo has not forged nor counterfeited artworks; Aghdashloo has not orchestrated sham auction sales of his works; Aghdashloo has not engaged in corruption, theft, or other criminal conduct; and Aghdashloo has not collaborated with Iranian Intelligence Services.

74. Parvaresh published the Statements to countless people throughout the world, and at a minimum, tens of thousands of people have viewed the Statements.

75. Parvaresh published the Statements with the knowledge that they were false and/or with reckless disregard of whether they were false or not. Parvaresh therefore published the Statements with actual malice.

76. Because Parvaresh's Statements are defamatory per se, general damages are presumed.

77. In addition, as a direct and proximate result of Parvaresh's publication of the

Statements, Aghdashloo has suffered and will continue to suffer actual and material harm to his reputation and standing in the community, personal humiliation, mental and emotional anguish and suffering, as well as special damages, including loss of income and business opportunities.

78. In making the Statements, Parvaresh acted intentionally, maliciously, willfully, and with the intent to injure Aghdashloo and/or to benefit himself. As such, Parvaresh is liable to Aghdashloo for punitive damages in an amount to be proved at trial.

79. Parvaresh's misconduct continues to cause Aghdashloo irreparable harm and Aghdashloo has no adequate remedy at law for the injuries he continues to suffer. As such, an award of monetary damages alone will not provide an adequate remedy to Aghdashloo.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Aghdashloo and against Parvaresh;

B. Enter an injunction requiring Parvaresh to remove and delete the Statements;

C. Award presumed, general, special, and punitive damages to Aghdashloo and against Parvaresh in an amount to be proved at trial;

D. Award Parvaresh's profits and Aghdashloo's damages, including treble amounts, pursuant to 15 U.S.C. §1117.

E. Award attorney's fees and costs to Aghdashloo and against Parvaresh to the extent permitted by law; and

F. Award such other and further relief as this Court may deem just and proper.

Dated: December 19, 2022　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　_____s/ Karl S. Kronenberger_____
　　　　　　　　　　　　　　　　　　　　　　Karl S. Kronenberger (Ohio SBN 0061807)

KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, CA 94108-4707
T: (415) 955-1155, ext. 114
F: (415) 955-1158
karl@kr.law

*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff Aydin Aghdashloo demands a trial by jury for all claims that may be triable to a jury.

Dated: December 19, 2022                                    Respectfully Submitted,

                                                                           s/Karl S. Kronenberger
Karl S. Kronenberger (Ohio SBN 0061807)
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, CA 94108-4707
T: (415) 955-1155, ext. 114
F: (415) 955-1158
karl@kr.law

*Attorneys for Plaintiff*